UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

RAY PARISH,

　　　　　　　　　　　　Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/22/2024

13 Cr. 829 (AT)

**ORDER**

ANALISA TORRES, District Judge:

　　　Ray Parish, a prisoner serving a 154-month sentence at FCI Manchester in Kentucky, moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). *See* Def. Mem., ECF No. 21; Def. Supp. Letter at 1, ECF No. 32; Parish BOP SENTRY Record (on file with the Court). The Government opposes the application. *See generally* Gov't Opp., ECF No. 27. For the reasons stated below, Parish's motion is GRANTED.

## BACKGROUND

　　　During the spring of 2013, Parish—then twenty-one years old—committed five robberies in the Bronx and Manhattan. *See* Presentence Investigation Report ¶¶ 10–16, 63–72 ("PSR") (on file with the Court). The robberies occurred on March 26; May 16, 25, and 26; and June 9, 2013. *Id.* Parish was arrested on June 9, 2013, and detained at Rikers Island. Def. Mem. at 2. On June 21, 2013, he was indicted by a grand jury in Bronx County Supreme Court for the March 26 and June 9, 2013 robberies (the "State Robberies"). *Id.*

　　　On November 1, 2013, Parish was transferred into federal custody, indicted, and detained at the Metropolitan Correctional Center ("MCC"). *Id.*; Dkt. Entry 11/1/2013. Parish remained in federal custody, and on April 17, 2014, pleaded guilty to the May 16, 25, and 26, 2013 robberies (the "May Robberies"), and one count of brandishing a firearm during the May 26 robbery, in

violation of 18 U.S.C. §§ 1951 and 924(c)(A)(ii).  Federal Plea Tr., ECF No. 10; Dkt. Entry

04/17/2014; *see* Superseding Information, ECF No. 8.  On September 30, 2014, the Honorable

Thomas P. Griesa sentenced Parish to 154 months' imprisonment, comprised of three concurrent

seventy-month sentences for each of the May Robberies and an eighty-four-month sentence for

the firearms charge, to run consecutively.  Judgment at 1–2, ECF No. 14.  Although the State

Robberies were detailed in the PSR, Judge Griesa did not address them at sentencing.   *See* PSR

¶¶ 63–72; *see generally* Federal Sent'g Tr., ECF No. 15.

Following Parish's federal sentencing, he "was removed from MCC and transferred back

into state custody and held at Rikers Island pending further state court proceedings."  Def. Mem.

at 3.  On April 10, 2015, Parish pleaded guilty to attempted robbery in the second degree in

connection with the State Robberies.  *See* Bronx Plea Tr., ECF No. 21-1.  On June 5, 2015,

Justice Troy Webber of the Bronx County Supreme Court sentenced Parish to six years'

imprisonment.  *See* Bronx Sent'g Tr., ECF No. 21-2.

During Parish's Bronx County plea and sentencing, Justice Webber stated that Parish's

six-year state sentence and subsequent term of supervised release would run concurrently with

the federal sentence already imposed by Judge Griesa.  *See* Bronx Plea Tr. at 4:13–17; Bronx

Sent'g Tr. at 7:2–7.  This intent was reinforced multiple times during sentencing, including in a

colloquy between Justice Webber and Parish in which Parish asked for clarification as to how the

federal and state sentences would run concurrently.  *Id.* at 2:14–7:7.  In response to Parish's

question "So it's going to run while I'm in the Feds?," Justice Webber explained:

> There's no additional time.  You're [sic] time is nine years that you are doing
> with the Feds. Then the supervision, Federal Supervision after. You're not
> really concerned about the state.  Once this [proceeding] is over, the State really
> has no further control over you.  Really everything is going to be sent over to
> the Feds."

*Id.* at 5:15–24.[1]  As the hearing concluded, Justice Webber asked Parish: "[I]s there anything you want to say before you're sentenced?"  *Id.* at 6:17–18.  Parish responded, "No, I just want it to run concurrent with the Federal time."  *Id.* at 6:19–20.  Justice Webber reassured him that "[e]verything is running concurrent with your federal time."  *Id.* at 6:21–22.

Although Justice Webber believed that Parish's state sentence would be subsumed by his federal sentence, because Parish was transferred back into state custody for the Bronx County plea and sentencing, he began serving his state sentence—and not his federal sentence— immediately after the Bronx County sentencing.  *See* State Sentence Computation at 1, ECF No. 21-3.  Parish served the six years of his state sentence, which ended on June 22, 2021, at Auburn Correctional Facility ("Auburn").  *Id.*  That day, he was transferred to the federal Metropolitan Detention Center ("MDC") to begin serving his federal sentence.  *See* Def. Mem. at 5; BOP Sentence Computation at 3, ECF No. 21-4; BOP SENTRY Record.  Upon entering federal custody, the Bureau of Prisons ("BOP") calculated Parish's projected release date for his federal 154-month sentence.  BOP Sentence Computation at 3.  BOP credited Parish's time at MCC and Rikers Island from June 10, 2013, to June 22, 2015, but not his detention at Auburn.  *Id.* at 3–4.  In other words, BOP determined that Parish's state and federal sentences would run consecutively—not concurrently—and that for the purpose of calculating his 154-month federal sentence, his time began in June 2021 minus any time in jail prior to his sentencings.  *Id.*  Based on BOP's calculation, Parish's federal sentence will terminate on April 8, 2032, at which point he will have served a total of 226 months' imprisonment between his state and federal

---

[1] Parish was sentenced in federal court to 154 months' imprisonment (twelve years and ten months), not nine years as Justice Weber asserted during the Bronx County sentencing.  The Court finds this discrepancy immaterial to the instant motion.  Further, the correct term of imprisonment was discussed at Parish's Bronx County plea hearing.  Bronx Plea Tr. at 4:13–17 ("The promise of the Court is that you will be sentenced to a term of incarceration of six years with five years post release supervision.  That sentence is going to run concurrent with the 13-year sentence you received on your Federal case.").

sentences—not the 154 months that he and Justice Webber expected.[2]  *Id.*

## LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes the Court to modify a term of imprisonment if it finds that: "(1) extraordinary and compelling reasons warrant such a reduction; (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) factors weigh in favor of a reduction in sentence."  *United States v. Saez*, No. 16 Cr. 317, 2024 WL 303847, at *2 (S.D.N.Y. Jan. 26, 2024) (quotation marks omitted).[3]

"A district court has broad discretion when considering a motion for compassionate release, and may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring."  *United States v. Sanchez*, No. 01 Cr. 74, 2022 WL 4298694, at *2 (S.D.N.Y. Sept. 19, 2022) (citations omitted).  To determine whether "extraordinary and compelling reasons" exist, the Court looks to—but is not constrained by—U.S.S.G. § 1B1.13.[4] As relevant here, § 1B1.13(b)(5) provides that any "other circumstance or combination of circumstances" that is "similar in gravity to" the enumerated circumstances in the policy statement constitutes an extraordinary and compelling reason, satisfying the first requirement. U.S.S.G. § 1B1.13(b)(5).  This statement, commonly referred to as the "catchall provision," recognizes that the Sentencing Commission "could not possibly identify the myriad

---

[2] BOP's sentence termination date does not incorporate good conduct time credit.  BOP projects that Parish will earn 598 days of good conduct time, moving his release date up to August 19, 2030.  BOP Sentence Computation at 4. To date, Parish has earned 122 days.  *Id.*

[3] Section 3582 also requires an inmate to exhaust administrative remedies by requesting compassionate release from prison authorities.  *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). Parish has satisfied this requirement by requesting release from the warden of his facility.  *See* ECF No. 21-5.

[4] U.S.S.G. § 1B1.13 applies to defendant-initiated petitions as of the Commission's most recent amendments to the Guidelines, effective November 1, 2023.  Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 28,254, 28,254 (May 3, 2023); *see Saez*, 2024 WL 303847, at *2–3.

extraordinary and compelling reasons that might warrant a sentence reduction" and that "judges are in a unique position to determine . . . what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence." *United States v. Cromitie*, No. 09 Cr. 558, 2024 WL 216540, at *5 (S.D.N.Y. Jan. 19, 2024) (quoting U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207); *United States v. O'Bryant*, No. 16 Cr. 317, 2023 WL 8447995, at *5 (S.D.N.Y. Dec. 6, 2023) (same). A defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

In addition, the Court must consider whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

## DISCUSSION

The Court finds that a sentence reduction is merited based on a combination of circumstances: (1) the disparity between the projected length of Parish's incarceration and the intent of the sentencing courts; (2) the conditions he endured while detained at Rikers Island, MCC, and MDC; and (3) his incarceration during the COVID-19 pandemic.

I. <u>Procedural Issues</u>

As a threshold matter, the Government argues that Parish's compassionate release motion is "an inappropriate vehicle to challenge sentence credits" and that such a challenge must be "filed pursuant to [28 U.S.C.] § 2241" as a petition for habeas corpus.  Gov't Opp. at 3–4 (citations omitted).  The Government contends that the motion must be denied because the Court does not have habeas jurisdiction.  *Id.*  The Government is incorrect.  A federal inmate has multiple means by which he can seek post-conviction relief.  Parish's motion is not a "challenge [to] the legality of his sentence or the BOP's computation."  Def. Reply at 1, ECF No. 30. Rather, he seeks relief based on the extraordinary nature of his incarceration—coupled with other factors—that he argues amounts to circumstances "similar in gravity" to those enumerated by the Sentencing Commission.  ECF No. 32.  As Parish was sentenced in this District, the Court has jurisdiction to adjudicate the motion.  *See* 18 U.S.C. § 3582(c); *see also, e.g.*, *United States v. Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020) (discussing the process by which an inmate files a compassionate release motion with the sentencing court after exhausting administrative remedies).

II. <u>Extraordinary and Compelling Reasons</u>

Parish's motion is based on a combination of extraordinary and compelling circumstances.  The Court will address each in turn, though pursuant to the catchall provision, its adjudication is based on their cumulative effect.

1. Parish's State and Federal Sentences

Parish contends that BOP's failure to credit his time in state custody and the resulting combined eighteen-plus years he is projected to spend incarcerated defies principles of fairness and constitutes extraordinary and compelling circumstances. The Court agrees.  The state

sentencing record is unequivocal: Justice Webber believed that Parish was being held in federal custody at the time of his Bronx County sentencing and that her imposition of the six-year state sentence would not add time on top of Parish's federal sentence.  *See* Bronx Sent'g Tr. at 7:2–7. Because of this misunderstanding, Parish will be incarcerated for seventy-two months more than he and Justice Webber expected.  Other courts have found similar circumstances to warrant a sentence reduction.  *See, e.g.*, *United States v. Castillo*, No. 18 Cr. 112, 2021 WL 1781475, at *3 (D. Conn. Feb. 22, 2021) (granting compassionate release where state court ordered sentences to run concurrently, but defendant served state sentence first and BOP did not credit time served in state facility); *United States v. Eccleston*, 543 F. Supp. 3d 1092, 1108, 1144 (D.N.M. 2021) (granting compassionate release based on defendant's "reasonable, but incorrect" belief that his state and federal sentences would run concurrently); *United States v. Comer*, No. 12 Cr. 43, 2022 WL 1719404, at *1–2 (W.D. Va. May 27, 2022) (granting compassionate release where, "in direct contravention of the Court's intent," defendant's federal sentence was "being run consecutive to, instead of concurrent to," his state sentence).

The Court's determination is guided by caselaw that speaks to (1) its broad discretion to consider "'all possible reasons for compassionate release' advanced by a defendant, including the 'injustice of [defendant's] lengthy sentence,'" and (2) the Circuit's guidance concerning how to interpret a court's silence on the question of consecutive versus concurrent sentences.  *United States v. Lopez*, 523 F. Supp. 3d 432, 438 (S.D.N.Y. 2021) (quoting *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020)).

With respect to the spectrum of possible extraordinary and compelling reasons, "[s]everal important factors, acting in tandem, make this case distinctive."  *Lopez*, 523 F. Supp. 3d at 438. As in *Lopez*, requiring Parish to serve his state and federal sentences consecutively—contrary to

the promise of the state sentencing judge—"undermines respect for the judicial process." *Id.* at 438. Further, Parish has already served a lengthy sentence, and the adjudication of this motion does not necessitate further "investigation, fact-finding or credibility assessment" or "turn on the retroactive application of new legal principles." *Id.* at 438–39. In sum, a period of incarceration that is nearly fifty percent longer than the sentencing judges contemplated contravenes the penological purposes of sentencing and counsels in favor of a finding of extraordinary and compelling circumstances.

The Court is also guided by the Circuit's insights in the context of *nunc pro tunc* designations.[5] Pursuant to 18 U.S.C. § 3621, BOP has sole authority over the calculation of a federal prisoner's sentence. *United States v. Wilson*, 503 U.S. 329, 334 (1992). Inmates may, however, request a *nunc pro tunc* designation whereby BOP credits a state sentence, counting the time served in state detention as part of the federal sentence. *McCarthy v. Doe*, 146 F.3d 118, 120–23 (2d Cir. 1998). In doing so, BOP turns to the federal sentencing court for a recommendation as to whether the state and federal sentences should run concurrently. *United States v. Fernandez*, No. 06 Cr. 484, 2023 WL 8006268, at *3 (S.D.N.Y. Nov. 16, 2023) (citing BOP Program Statement No. 5160.05, Designation of State Institution for Service of Federal Sentence, at 4 (2003)). The Circuit has explained that in these circumstances,

> there is no basis to infer any intention as to consecutive or concurrent service from the [federal] sentencing judge's silence, which could equally well indicate either that the judge did not know another sentence would be imposed, or did not know what the future sentence would be. The judge's failure to specify concurrence in these circumstances is not reasonably interpreted as indicating an intention that the sentences be consecutive.

---

[5] *Nunc pro tunc*—Latin for "now for then"—means for an order to have "retroactive legal effect." *Silvester v. Selene Fin., LP*, No. 18 Civ. 2425, 2019 WL 1316475, at *2 (S.D.N.Y. Mar. 21, 2019) (quoting Black's Law Dictionary (10th ed. 2014)).

*McCarthy*, 146 F.3d at 122.[6]  In accordance with this directive, courts in this Circuit regularly carry out the intent of the state sentencing court, recommending that BOP grant an inmate's *nunc pro tunc* designation request.  *See, e.g.*, *Jenkins v. United States*, 246 F.R.D. 138, 141–42 (E.D.N.Y. 2007).  Doing so "accords with the intention at the original sentencing" by ensuring the defendant "receives sufficient punishment for his serious federal crime" while "respect[ing] the integrity of the state court's sentence[,] which took into account the already-imposed federal sentence."  *United States v. Campbell*, No. 14 Cr. 231, 2024 WL 1521311, at *1 (S.D.N.Y. Apr. 5, 2024) (cleaned up).  Although not a *nunc pro tunc*-related motion, the Court heeds the Circuit's counsel as it applies to Parish's motion and finds no sound reason why an interpretation of Judge Griesa's silence should nullify Justice Webber's unambiguous intent.  Parish's current 226-month combined sentence—which fails to do just this—amounts to an extraordinary and compelling circumstance.

####     2.    Incarceration at New York City Jails

Since his arrest in June 2013, Parish has served over three years at Rikers Island, MCC, and MDC, including 367 days at MDC in 2021 and 2022 during the COVID-19 pandemic.  BOP Sentence Computation at 3–4; BOP SENTRY Record.[7]

Courts in this Circuit recognize that the harsh conditions of confinement at the area's jails

---

[6] The Supreme Court's decision in *Setser v. United States*, which held that federal sentencing judges have the authority to decide whether a yet-to-be-imposed state court sentence will run concurrently or consecutively, does not upset the Circuit's directive not to draw inferences from a federal judge's prior silence on the issue.  *United States v. Alvarez*, No. 09 Cr. 386, 2015 WL 1851658, at *2 (S.D.N.Y. Apr. 17, 2015) (remarking that the Supreme Court in *Setser* "did not have before it, and did not address, the question of how determinations should be made about retroactive designations that have the effect of making federal and state sentences run concurrently when the federal sentencing judge was originally silent on the issue"); *see also Cruz v. Bureau of Prisons*, No. 10 Civ. 5460, 2013 WL 12177171, at *11 (S.D.N.Y. Mar. 22, 2013), *R&R adopted*, 2014 WL 12648510 (S.D.N.Y. Mar. 24, 2014), *aff'd sub nom. Cruz v. Walsh*, 633 F. App'x 794 (2d Cir. 2015).

[7] Parish was held in New York City state and federal jails for 743 days between June 10, 2013, and June 22, 2015.  *See* BOP Sentence Computation at 3–4.  And, after serving his state sentence, he was detained at MDC for a total of 374 days from June 22, 2021, to June 23, 2022, and October 11 and 17, 2023.  In total, Parish has been detained at these facilities for 36 months and 21 days.

counsel in favor of a shorter overall sentence. *See, e.g.*, *United States v. Gonzalez*, 18 Cr. 669 (S.D.N.Y. Apr. 2, 2021), ECF No. 250; *United States v. Chavez*, 22 Cr. 303, 2024 WL 50233, at *1–7 (S.D.N.Y. Jan. 4, 2024). The conditions at MDC, for example, include "near-perpetual" lockdowns that prohibit detained persons "from leaving [their cells] for visits, calls, showers, classes, or exercise"—conditions that are "tantamount to solitary or near-solitary confinement." *Chavez*, 2024 WL 50233, at *5–7. MDC is also "notoriously and, in some cases, egregiously slow in providing necessary medical and mental health treatment to inmates." *Id.* at *6. And, the physical conditions of MDC include mold, contaminated drinking water, broken lights, and broken emergency call buttons. *Id.* Further, "severe staffing shortages" have led to violence going unaddressed for extended periods of time, leaving wounded inmates in dire conditions and witnesses perpetually in fear of violence and without protection. *Id.* at *2, *5–8. As one court recently remarked, at MDC, "[c]haos reigns, along with uncontrolled violence." *United States v. Colucci*, No. 23 Cr. 417, 2024 WL 3643857, at *7 (E.D.N.Y. Aug. 5, 2024).

Similar conditions plagued the now-defunct MCC. "The conditions at [MCC] got so bad that, in August 2021, after a single visit by the Deputy Attorney General, the Department of Justice ordered the facility shuttered." *Chavez*, 2024 WL 50233, at *1. And, the harsh and unconstitutional conditions at Rikers Island are well-documented. *See, e.g.*, *Nunez v. City of New York*, 11 Civ. 5845 (S.D.N.Y. Dec. 18, 2014), ECF No. 249 (consent judgment discussing federal investigation into excessive use of force and violence against adolescent inmates and finding systemic deficiencies in the treatment of inmates across jail populations).

The conditions at the area's jails make time spent there "essentially the equivalent of either time and a half or two times what would ordinarily be served." *Gonzalez,* 18 Cr. 669, ECF No. 250 at 17:18–18:3. Such time is "materially different than [time] served at a jail or prison

elsewhere in the United States." *Colucci*, 2024 WL 3643857, at *7. Accordingly, "it is routine for judges in both this District and the Eastern District [of New York] to give reduced sentences to defendants based on the[se] conditions." *Chavez*, 2024 WL 50233, at *1. This factor, therefore, also weighs in favor of a sentence reduction.

       3.   Incarceration During the COVID-19 Pandemic

As to the effect of COVID-19 on incarceration, Parish has been incarcerated throughout the entirety of the pandemic and has "experienced the full gamut of pandemic-related horrors," including "extended lockdowns, constant fear of contracting a deadly virus, limited communication with family, and reduced access to programming." Def. Mem. at 9.

The Court agrees with Parish that "the pandemic has made incarceration harsher and more punitive than would otherwise have been the case." *United States v. Tellier*, No. 92 Cr. 869, 2022 WL 1468381, at *4 (S.D.N.Y. May 10, 2022) (citation omitted); *see United States v. Rengifo*, No. 09 Cr. 109, 2021 WL 5027334, at *14 (S.D.N.Y. Oct. 29, 2021) (finding that the "unanticipated severity" of lockdown conditions "constitutes another circumstance that, in combination with other factors . . . , collectively amounts to an extraordinary and compelling reason for early release"); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (holding that "the pandemic, aside from posing a threat to [defendant's] health, has made [his] incarceration harsher and more punitive than would otherwise have been the case," supporting a sentence reduction); *United States v. Mcrae*, No. 17 Cr. 643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. Although such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing."); *United*

*States v. Djemal Nehmad*, No. 16 Cr. 829, 2020 WL 6719380, at *3 (S.D.N.Y. Nov. 16, 2020)

(granting compassionate release in part because defendant "ha[d] not seen any member of his

family in four years"); *United States v. Cardenas*, No. 17 Cr. 339, 2021 WL 3722761, at *2

(S.D.N.Y. Aug. 23, 2021) (granting sentence reduction in 2021 where, due to pandemic-related

restrictions, defendant "ha[d] not seen his wife and young daughter since 2019").

      Parish has endured "conditions of confinement that were not contemplated at the time

that the Court imposed [his] sentence." *United States v. Herbert*, No. 03 Cr. 211, 2024 WL

1931962, at *2 (S.D.N.Y. May 2, 2024). In Parish's case, "the Court believes that [such]

pandemic-induced conditions . . . constitute 'extraordinary and compelling' circumstances

warranting compassionate release, particularly" given Parish has "(i) served [a] long sentence[]

and (ii) been detained for the entirety of the pandemic." *United States v. Barraza Payan*, No. 18

Cr. 422, 2022 WL 17757779, at *5 (S.D.N.Y. Dec. 19, 2022); *see also Lopez*, 2024 WL 964593,

at *5 (finding that "the lockdowns and associated rigors experienced by" the defendant "qualify,

under the catch-all provision of this guidance, as an extraordinary and compelling reason

justifying a sentence reduction").

## III. Section 3553(a) Factors

      Finally, the Court finds that the § 3553(a) factors do not proscribe granting the requested

relief. There is no doubt that the nature of Parish's criminal conduct was serious. However, he

has been incarcerated for more than eleven years, which is sufficient to "promote respect for the

law, . . . provide just punishment[,] . . . [and] afford adequate deterrence." 18 U.S.C.

§ 3553(a)(2)(A)–(B).

      As to the need to "protect the public from further crimes of the defendant," 18 U.S.C.

§ 3553(a)(2)(C), the Sentencing Commission has found that recidivism rates drop as offenders

age, with offenders aged thirty and older less likely to reoffend upon release.  U.S. Sent'g

Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 22 (Dec. 2017); *see id*.

at 22–26.  The Commission has also found that "[o]ffenders incarcerated for more than 120

months had a statistically significant preventative relationship between [the] length of

incarceration and recidivism."  U.S. Sent'g Comm'n, *Length of Incarceration and Recidivism* 20

(June 2022).  Parish is thirty-three years old and has served over 120 months in prison.  The

Court, therefore, finds that he poses a substantially diminished threat to the public.

And, looking to the "history and characteristics of the defendant," the Court considers

(1) Parish's traumatic and abusive upbringing, as extensively detailed in the PSR and his initial

sentencing memorandum and discussed at his sentencing, *see* Federal Sent'g Tr. at 3:6–5:25;

PSR ¶¶ 74–91; Lang Mitigation Report, ECF No. 12-1; (2) the strides he has made toward

rehabilitation, including his "electrical trade coursework in state prison" and his aim to find work

as an electrician upon release, Def. Mem. at 13; and (3) the letters from his family, which

describe his devotion to his daughter, his desire to serve as an equal and supportive co-parent

with her mother, and their determination to support his reentry, ECF Nos. 21-6 to -10.

## CONCLUSION

Weighing Parish's circumstances in the aggregate, the Court finds that they are "similar

in gravity" to those explicitly enumerated in the Guidelines' compassionate release policy

statement.  Pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(5), the motion is

GRANTED.  It is hereby ORDERED that Parish's term of imprisonment be reduced to time

served.  All other components of the sentence remain as originally imposed.  The Clerk of Court is directed to terminate the motions at ECF Nos. 21 and 25.

SO ORDERED.

Dated: August 22, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge